06-1212-cv
Porzig v. Dresdner Kleinwort

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: February 16, 2007                    Decided: August 7, 2007)

Docket No. 06-1212-cv

-----------------------------------------------------------------------x

BERNHARD B. PORZIG,

      *Plaintiff-Appellant*,

    -v.-

DRESDNER, KLEINWORT, BENSON, NORTH AMERICA
LLC and DRESDNER BANK AG,

      *Defendants-Appellees*,

-----------------------------------------------------------------x

    Before:  HON. GUIDO CALABRESI,
           HON. BARRINGTON D. PARKER,
           HON. PETER W. HALL,
                              *Circuit Judges*.

    Plaintiff-Appellant Bernhard Porzig appeals from an order of the United States District Court for the Southern District of New York (Jones, *J.*) denying his motion to vacate and modify an arbitration award. VACATED and REMANDED.

                        Michael K. O'Donnell, Law Office of Michael K.
                        O'Donnell, Greenwich, CT, for Plaintiff-Appellant.

                        Barry Cozier (Kenneth J. Kelly, David J. Clark, *of
                        counsel, on the brief*) Epstein, Becker & Green,
                        P.C., New York, NY, for Defendants-Appellees.

HALL, *Circuit Judge*:

Bernhard Porzig seeks vacatur of a modified arbitration award. The award was the result of Porzig's success in an underlying arbitration proceeding in which Porzig had alleged intentional age discrimination in violation of State and Federal laws. On appeal, Porzig asserts that the award he received for attorney's fees was issued in manifest disregard of the law. We find that a portion of the award in this case was issued in violation of the Federal Arbitration Act and that additional significant portions were issued in manifest disregard of the law based on the convergence of multiple factors implicating the integrity of the award. Accordingly, we vacate the order of the District Court, and remand to that court for further proceedings.

## I. Factual and Procedural Background

Porzig was hired as Vice President of Central Bank Sales by Dresdner Securities, a subsidiary of Dresdner Bank, in December 1995. As a condition of his employment, Porzig was required by the NASD, the industry self-regulatory organization, to sign and execute a standard "U-4" form containing an agreement to arbitrate any future disputes. Porzig agreed he would "arbitrate any dispute, claim or controversy that may arise between [himself] and [his] firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD]." The NASD regularly required such agreements as a condition of employment. *See id.* at 198 & n.1. According to this pre-dispute agreement, the arbitration was to be conducted in accordance with NASD's Code of Arbitration Procedure.

In January of 1998, Porzig was fired. Initially, he filed an action against the Defendants Dresdner, Kleinwort, Benson, North America LLC and Dresdner Bank ("Dresdner") in the Southern District of New York making a claim under the Age Discrimination in Employment

2

Act ("ADEA"), 29 U.S.C. § 623, *et. seq.* Upon motion by Dresdner, the District Court stayed the action because the dispute was subject to the arbitration provisions of the agreement Porzig had signed upon entering employment. Thereafter, the parties submitted their dispute to a three member Arbitration Panel ("Panel") at the NASD.

The Panel concluded that "age was a factor" in Dresdners' decision to terminate Porzig's employment. The Panel awarded Porzig $96,200 in compensatory damages, plus $27,679 of interest, and $96,200 in punitive damages. Contrary to statutory requirements,[1] the Panel did not award Porzig attorney's fees or costs and, in fact, assessed $13,840.75 against Porzig in forum, filing, and arbitrators' fees (hereinafter the "Original Award").

Porzig appealed the Original Award to the Southern District of New York, seeking a modification to provide him an award of attorney's fees and costs and to vacate the Panel's assessment against him of the various fees. The District Court (Jones, *J.*) concluded the arbitrators had acted in manifest disregard of the law with respect to attorney's fees, finding there had been "ample evidence to support the conclusion that the arbitrators were made aware of the applicable law but either refused to apply it or ignored it altogether." The court remanded the case to the Panel to determine the reasonable attorney's fees to which Porzig was entitled and to fashion a new award. Although in its initial order the District Court denied Porzig's motion to vacate or modify the award as to costs, it subsequently granted his motion when it reconsidered its decision on that point. Concluding on the motion to reconsider that the arbitrators had in fact

---

[1] Section 626(b) of the ADEA, 29 U.S.C. § 626(b), incorporates by reference 29 U.S.C. § 216(b) of the Fair Labor Standards Act, which states, in relevant part, that "[t]he court . . . *shall,* in addition to any judgment awarded to the plaintiff, . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 822 (2d Cir. 1997) (alteration in original).

3

disregarded the law with respect to costs "just as they did with respect to attorney's fees," the court vacated the original award as to costs and instructed the Panel also to modify the award and assess the $13,840.75 in costs against Defendants, not Porzig.

On remand, Porzig submitted to the Panel a fee application that consisted of an Attorney Affirmation and a Memorandum of Law. The application included detailed billing records outlining each fee request delineated on a spreadsheet that set out the date of the service, a description of the service, the time spent, and the rate charged, documenting a total of $249,996.95 in attorney's fees and $12,050.09 in costs. The billing records included entries for the representation Attorney Michael K. O'Donnell had provided before the District Court successfully arguing Porzig's right to receive attorney's fees and costs. Porzig explicitly informed the Panel that he was entitled to attorney's fees to compensate him for the time his attorney spent preparing the fee application and for litigating the fee claim. In support of this position, he cited *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd on other grounds*, 448 U.S. 122 (1980), which clearly states that attorneys are to be recompensed for time spent litigating attorney's fees.

For their part, Dresdner filed an affidavit in opposition to Porzig's fee application arguing contrary to law, *see Blanchard v. Bergeron*, 489 U.S. 87 (1989), that Porzig's contingency fee arrangement with Mr. O'Donnell "should set the maximum limit ($73,359.67) on the amount Porzig can recover under the fee-shifting statute." To that end, Dresdner requested the Panel require Porzig to disclose the details of his fee agreement with his counsel to help the Panel determine the new award. Dresdner suggested, also contrary to law, *see* 29 U.S.C. § 626(b); *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir. 1983), that in circumstances such as

4

Porzig's, "an award of attorneys' fees may . . . be unnecessary to achieve the purposes of the statutory fee-shifting provision." They indicated to the Panel that "Porzig's attorney fee application should be substantially reduced, *if not denied in its entirety*." (Emphasis added). While Dresdner did not specifically deny Porzig's accurate recitation of settled law establishing Porzig's right to collect fees and costs for the time spent litigating his right to those fees, Dresdner's statement that Porzig's contingency fee "should set the maximum limit" on his recovery clearly precludes fees expended to recover attorney's fees. Dresdner also requested reimbursement of $26,261.19 in fees accrued in connection with the removed federal action Porzig brought initially. Porzig filed papers opposing that position.

In response to the parties' motions, the Panel issued an order requesting that Mr. O'Donnell provide the Panel with copies of all fee agreements between him and Porzig. Porzig requested the Panel reconsider that request or, at minimum, require Dresdner's counsel's billing and expense records for comparison of fees. The Panel denied both of Porzig's requests. Porzig ultimately submitted the information regarding his fee contract with Mr. O'Donnell, which allowed O'Donnell "one-third (33-1/3[] percent) of any recovery by settlement or otherwise" and stated that Porzig would be responsible *for "any out-of-pocket expenses and disbursements which may be incurred," as well as a $2,500 retainer fee.* The affidavit Mr. O'Donnell submitted with the fee agreement concluded the "attorney's fees, costs, and net disbursements" from his representation of Porzig amounted to $79,937.81, plus the $2,500 retainer fee, for a total of $82,437.81.

5

The Panel issued its modified arbitration award (hereinafter "Modified Award") on May 19, 2004. The Modified Award granted Porzig's application in part, ostensibly awarding $75,000 for attorney's fees and $8,500 in costs. It stated:

> [Defendants] are jointly and severally liable for and shall pay to Respondent's counsel, Mr. O'Donnell, the sum of $75,000.00 for reasonable attorneys' fees (which sum includes interest from the date of the award of damages to Respondent) in the above matter, and an additional sum of $8,500.00, the reasonable amount of costs and disbursements, for a total amount of $83,500.00.
>
> [Porzig's] counsel, Mr. O'Donnell, shall remit to Respondent Porzig the sum of $82,437.81, which Mr. O'Donnell[] has represented as constituting all attorneys' fees, costs, disbursements, and expenses retained by him out of the Panel's award, or otherwise paid to him by [Porzig].

Porzig again appealed to the District Court from that Modified Award, requesting the court vacate that award with respect to attorney's fees and again remand the issue to the Panel with instructions that it use the lodestar method of calculation to determine the reasonable fees, direct Dresdner to submit evidence of their attorney billing and expense records, vacate the Modified Award with respect to its instruction to Attorney O'Donnell to reimburse Porzig's paid contingency fee, and modify that award to ensure all forum, filing, and arbitrators' fees and expenses are paid by Defendants. The District Court denied Porzig's motion, and Porzig appealed to this Court seeking essentially the same relief.[2]

---

[2] Porzig does not reiterate on appeal his request that the District Court order the Panel to provide that all forum, filing, and arbitrators' fees and expenses be paid by Defendants. While we assume this will not be an issue on remand, we remind the Panel that it would act, again, in manifest disregard of law were it to factor these fees into its calculation of what to award Porzig on remand. The Panel is, of course, free on remand to grant Porzig's request explicitly to assess these fees against Dresdner.

## II. Analysis

Porzig argues principally that the Modified Award reflected once again the Panel's manifest disregard of the law. The Dresdner Defendants in turn contend that under the limited standard of review, there is no basis to vacate or modify the Modified Award.

"When a party challenges the district court's review of an arbitral award under the manifest disregard standard, we review the district court's application of the standard *de novo*." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (quotation marks and citation omitted). Courts, however, "play only a limited role when asked to review the decision of an arbitrator," *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 36 (1987), and only a "very narrow set of circumstances delineated by statute and case law" permit vacatur, *Duferco Int'l. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).

This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process, *see, e.g., Halligan v. Jaffray, Inc.*, 148 F.3d 197, 200 (2d Cir. 1998) (noting the strong judicial support of "the use of arbitration as a device to resolve disputes"). The value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process. *See DiRussa v. Dean Witter Reynolds,* Inc., 121 F.3d 818, 821 (2d Cir. 1997); *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 190-91 (2d Cir. 1999). To encourage and support the use of arbitration by consenting parties, this Court, therefore, uses an extremely deferential standard of review for arbitral awards. *See Duferco*, 333 F.3d at 388.

7

A decision of an arbitrator, however, is not totally impervious to judicial review. The FAA provides four statutory grounds for vacatur in situations that involve, generally, impropriety on the part of the arbitrators.[3] In addition, a court may vacate an award if it exhibits a "manifest disregard of the law." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002) (quoting *DiRussa*, 121 F.3d at 821). Our review under the doctrine of manifest disregard of the law is highly deferential and such relief is appropriately rare. *Duferco*, 333 F.3d at 389. An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." *Wallace*, 378 F.3d at 189 (internal quotation marks omitted).

Other Circuits have recognized additional, nonstatutory bases upon which a reviewing court may vacate an arbitrator's award, including where the awards are "completely irrational," *Hoffman v. Cargill Inc.,* 236 F.3d 458, 461 (8th Cir. 2001) (internal quotation omitted); *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986), "arbitrary and capricious," *Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1326 (11th Cir. 2005), and contrary to an explicit public policy, *Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 481 F.3d 813, 819 (D.C. Cir. 2007); *Twin Cities Galleries, LLC v. Media Arts Group, Inc.* 476 F.3d 598, 600 (8th Cir. 2007); *Prestige Ford v. Ford Dealer Computer Servs.,* 324 F.3d

---

[3] The FAA allows for vacatur: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

391, 395-96 (5th Cir. 2003). To the extent our sister courts may have broadened somewhat the path to vacatur of an arbitration award, we decline to wander from the narrow one embodied in our own jurisprudence. Thus, we will vacate an award only upon finding a violation of one of the four statutory bases, or, more rarely, if we find a panel has acted in manifest disregard of the law. *See Wallace*, 378 F.3d at 189.

That said, in our review of this case we find several issues that cause us great concern. We examine them in more depth below, but, generally, the following factors cloud the presumption of validity of the award: (1) the district court concluded the original attorney's fee award was issued in manifest disregard of the law and vacated the award; (2) the same Panel on remand acted without authority with respect to a portion of the award; (3) Porzig accurately explained to the arbitrators the controlling law with regard to attorney's fees, while the Defendants advanced several misstatements of law to the Panel — including one on the very point of law on which the district court had found manifest disregard; (4) the Panel did not explain how it came up with a fee award virtually identical to the contingent fee. Taken individually, in all likelihood, such circumstances would not have overcome the deference owed to the Panel's award. Taken together, however, these circumstances create, if not the perfect storm, then a disturbance ample enough to give us pause. Upon careful reflection, and mindful of the importance that the arbitration process plays in dispute resolution today and the narrow lens through which we examine such awards, we conclude the award here was issued partially in violation of the enabling statute and partially in manifest disregard of law and must be vacated.

## A. Order to Return Fees to Client

The mere fact that an arbitral panel may have interactions with both a party and the party's lawyer based on the lawyer's representation of the client before the panel does not give the panel a long arm to exercise jurisdiction over the attorney-client relationship. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (arbitrators must not be allowed to "impose obligations outside the contract" (quotation marks and citation omitted)). A paramount question for reviewing courts is whether the arbitral panel has acted within the bounds of its authority. *See 187 Concourse Assocs. v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (per curiam) (noting in collective bargaining context that the award must "draw[] its essence from the collective bargaining agreement, since the arbitrator is not free merely to dispense his own brand of industrial justice" (internal quotation marks omitted)); *Local 1199, Drug, Hospital, & Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) ("The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." (quotation marks and citation omitted)). The authority of the arbitral panel is established only through the contract between the parties who have subjected themselves to arbitration, and a panel may not exceed the power granted to it by the parties in the contract. *See* 9 U.S.C. § 10(a)(4); *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003); *see also Brook v. Peak Int'l*, 294 F.3d 668, 672 (5th Cir. 2002) ("The power . . . of arbitrators . . . is dependent on the provisions under which the arbitrators were appointed." (internal quotation marks omitted)). The arbitrator is constrained foremost by this principle that "a party cannot be forced to arbitrate any dispute that it has not obligated itself, by contract, to submit to arbitration." *See United Steelworkers v. Mead*

10

*Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). Where the arbitrator goes beyond that self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated. 9 U.S.C. § 10(a)(4).

Porzig's attorney was not before the arbitration panel in any manner other than as Porzig's counsel; Porzig was not before the Panel with respect to his relationship with his attorney; and neither Porzig nor Attorney O'Donnell had agreed to arbitrate a dispute, if in fact there was one, over their fee contract. The Panel here was plainly without jurisdiction to order Porzig's lawyer to pay back to his client the specified contingency fee. That portion of the Modified Award must be vacated.[4] *See* 9 U.S.C. § 10(a)(4); *Brooks Drug Co.*, 956 F.2d at 25.

**B. Reasonable Attorney's Fees**

In ascertaining the amount of reasonable attorney's fees to which a successful claimant is entitled, arbitration panels use the same fee calculation methods as the courts—generally the "lodestar"[5] analysis by which the decision maker considers all of the case-specific variables

---

[4] Although neither party has raised the issue, we note the concern that a conflict of interest may arise when a lawsuit such as this one is filed for attorney's fees in the client's name. However, because any attorney's fee award ultimately belongs to Porzig, the client, and not the attorney, *see Evans v. Jeff D.*, 475 U.S. 717, 730 (1986), we conclude the decision reached here does not create any conflict between Porzig and his counsel. We assume the attorney and client will settle the distribution of the attorney's fees, which are Porzig's property, according to their own contract terms, which are beyond the province of this Court. *See, e.g., Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir. 1999) (noting extrajudicial nature of private contracts not before a court).

[5] We note that this Court recently opined that the "meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2007 WL 2004106, *7 & n.4 (2d. Cir., July 12, 2007). While not requiring subsequent Panels to abandon the entrenched term, *Arbor Hill* persuasively reasons that because the Supreme Court has not resolved the relationship between the "lodestar" method and the *Johnson* method, *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)*, abrogated on other grounds*

11

courts have identified as relevant to the reasonableness of the attorney's fees. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2007 WL 2004106, *7 & n.4 (2d. Cir., July 12, 2007); *see also see also Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (discussing fee calculation); *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (same). The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award. *See Arbor Hill*, 2007 WL 2004106 (analyzing reasonable fee methodology); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir. 1998). Courts are regularly called upon to conduct a reasonable fee analysis even though a lawyer may have taken the case on a contingent fee. *See, e.g., Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Luciano v. Olsten Corp.,* 109 F.3d 111 (2d Cir. 1997); *Dominic v. Consol. Edison Co. of New York, Inc.*, 822 F.2d 1249 (2d Cir. 1987). Generally when reviewing analyses of reasonable attorney's fees, we have the benefit of being able to examine the methodology used by a district court to ensure that court applied the law correctly. While arbitral panels may, but are not required to, explain their reasoning, when the circumstances that exist in this case are present—namely, where a court has already taken the rare and extreme step of vacating the original award for being issued in manifest disregard of law, where the Panel on remand has acted plainly outside its authority with respect to one facet of the award, and where we do not have the benefit of being able to examine the Panel's analytical methodology on the very issue that required the original vacatur and remand—we may consider that absence of explanation

---

by *Blanchard v. Bergeron,* 489 U.S. 87, 92-93, 96 (1989)*,* the term lodestar is indeed a misnomer. *Arbor Hill*, 2007 WL 2004106, at *6. We generally agree and employ the term here only as a point of orientation.

when deciding whether the Panel has acted in manifest disregard of the laws. *Halligan*, 148 F.3d at 204 ("[W]e believe that when a reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrators to explain the award can be taken into account.").

It is true that a reviewing authority may consider the contingency fee paid in determining a reasonable attorney's fee, *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 92-93, 96 (1989); it is also undisputed, however, that the contingency fee may not serve as a cap on an attorney fee award, *Blanchard*, 489 U.S. at 90 (1989). Porzig carefully and accurately explained to the arbitral panel the prevailing law as to the manner in which a contingency fee may be considered in a fee calculation. *Cf. DiRussa*, 121 F.3d at 823 (finding plaintiff had not explained to the arbitrators that attorney's fees were *mandated* under the statute).

In addition, both Porzig and the District Court made clear to the Panel that it was not only obliged to award Porzig attorney's fees under the ADEA, *see Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir. 1983); *accord Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997), it was also obliged to award fees for pursuing that statutory right to fees. As we stated in *Gagne*,

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. . . . Such a result would not comport with the purpose behind most statutory fee authorizations, [v]iz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

13

*Gagne*, 594 F.2d at 344 (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)); *see also, e.g., Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 316 (2d Cir. 1990) (allowing for attorney's fees and costs incurred in defending appeal).

These rules of law pertaining to contingent fees with respect to attorney's fee awards are explicit, well-defined, and clearly applicable to this case. The record is clear that the arbitrators were told they were required to compensate Porzig for his reasonable attorney's fees—indeed their prior failure to do so required the award to be vacated—and, from Porzig's submissions, that contingent fees may not serve as a cap on attorney's fee awards. *Wallace*, 378 F.3d at 189.

Despite the settled jurisprudence with respect to the mandatory requirement both that attorney's fees be awarded for successful claims brought under the ADEA and that attorney's fees be awarded for litigation enforcing the right to those fees, Dresdner nonetheless made two problematic arguments to the Panel: (1) "an award of attorneys' fees may . . . be unnecessary to achieve the purposes of the statutory fee-shifting provision," and (2) the contingency fee "should set the maximum limit . . . on the amount Porzig can recover under the fee-shifting statute." The first flies in the face of the district court's determination that the Panel had already manifestly disregarded the law when it first refused to award attorney's fees. The second is contrary to a position already established by the Supreme Court. *See Blanchard*, 489 U.S. 87.

In this case, the Panel, stating it had considered "numerous factors" when fashioning the award, awarded Porzig $83,500.00 in attorney's fees and costs. This award is remarkably similar to the $82,437.81 contingent fee Attorney O'Donnell stated he had already received from Porzig. The Panel did not indicate whether it had considered the fact that Porzig was required to appeal the Original Award to the District Court or the time Attorney O'Donnell spent on the fee

14

application. This similarity in amount between the original contingency fee and the Modified Award, viewed in light of the (now vacated) portion of the order requiring Attorney O'Donnell to reimburse that contingency fee, and seen against the backdrop of the litigation history of the Panel's inquiry into that fee, suggests that the Defendants' misstatement of the law with respect to contingent fees influenced the Panel in its final determination.[6] Moreover, it is apparent the Panel failed to award Porzig any attorney's fees whatsoever for the time his attorney spent in District Court successfully litigating his statutory right to the fees or for the attorney time spent relitigating the issue in front of the Panel after remand from the District Court—fees which, as had been made clear to the Panel, were mandatory. *Gagne*, 594 F.2d at 344.

In this case, because of the lack of any transparent fee calculation analysis by the Panel, which handicaps our ability to review the reasonableness of the Modified Award,[7] the numerous incorrect representations regarding the applicable law made by the Defendants to the Panel, the

---

[6] We also find troubling Dresdner's repeated insinuations to the Panel, as well as this Court, that Attorney O'Donnell's hourly fee rate should be reduced because he is a solo practitioner. While it is true that courts and arbitral panels deciding reasonable fees can and should take into consideration many aspects of an attorney's practice to ensure a reasonable hourly rate, *see Arbor Hill*, 484 F.3d at 169, it is long established that "courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner." *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006).

[7] We do not hold here that any failure on the part of an arbitration panel to set forth a transparent fee analysis will subject the award to heightened judicial scrutiny. Indeed, we reiterate that arbitral panels are not required to explain their awards. This award, however, was issued *after* a federal court had taken the rare step of concluding, correctly, that the Panel had acted in manifest disregard of law—a handslap, no doubt, that one would have supposed would make the Panel consider its subsequent actions with careful regard. Instead, the Panel, issued a portion of the award without any authority whatsoever, chose not to explain its methodology and then apparently ignored the law again. In these circumstances, the failure to provide an explanation is suspicious at best, and we will take that failure into account.

15

fact that the Panel issued the original award in manifest disregard of the law, and the fact that the Panel issued a portion of the present award without authority, we conclude that the Modified Award was issued in manifest disregard of the law.

### E. Other Claims

Porzig also seeks a decision from this Court that would mandate the Panel to order Dresdner to produce records of their attorneys' fees and costs. While the Panel is free to do so on remand, we affirm the District Court's denial of that request, substantially for the reasons stated in the District Court's opinion.

### F. Appellate Attorney's Fees

Appellate attorney's fees may also be awarded under the ADEA when the appellate court determines in its discretion that they are appropriate. *See, e.g., Goodman v. Heublein, Inc.*, 682 F.2d 44, 48 (2d Cir. 1982); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1052-53 (11th Cir. 1989); *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1545 (11th Cir. 1988) (quoting *O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1553 (11th Cir. 1984)); *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1097-98 (5th Cir. Unit B Oct. 1981); *Cleverly v. Western Electric Co.,* 594 F.2d 638, 643 (8th Cir. 1979); *see also Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1557 (10th Cir. 1988); *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1502 (9th Cir. 1986). We conclude such fees are appropriate in this instance. Accordingly, on remand, the District Court shall determine the reasonable amount of attorney's fees to be awarded for the time Porzig spent appealing the Modified Award to the District Court and to this Court, and enter judgment therefor. The District Court shall instruct the Panel to include those fees in its award, which shall be in addition to, but not duplicative of, the fees and costs to be calculated by the

16

Panel on remand. *See Dague v. City of Burlington*, 976 F.2d 801, 804-05 (2d Cir. 1992) (noting that although appellate courts may determine appellate fees, district courts are generally best suited to task).

### III. Conclusion

For the reasons stated, we vacate the District Court's decision. We remand to the District Court for further proceedings consistent with this opinion and to determine the appropriate amount of appellate attorney's fees.